Not For Publication                                                                    CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

CORY MASBETH,                          :
                                       :
          Plaintiff,                   :     Civil Action No. 06-6076 (FSH)
                                       :
          v.                           :     **OPINION**
                                       :
COMMISSIONER OF SOCIAL                 :     June 27, 2008
SECURITY,                              :
                                       :
          Defendant.                   :
_____:_____

**HOCHBERG, District Judge.**

This matter comes before the Court upon Plaintiff's motion to review a final

determination of the Commissioner of Health and Human Services ("Commissioner") pursuant

to the Social Security Act, as amended, 42 U.S.C. § 405(g).  The motion has been decided upon

the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

I.        **Background.**

Plaintiff alleges he became disabled on July 15, 2002.  He was 38 years old, had an 11th

grade education, and had prior work experience as a self-employed tow truck driver and

mechanic. (Tr. 42, 51, 56, 350, 388.)  Plaintiff was out of work from July 15, 2002 to February

25, 2002, alleging he was disabled because of herniated disks in his back and neck.  (Tr. 50,

375.)  A series of diagnostic studies since January 2002 show multiple cervical and lumbrosacral

disc bulges and herniations, as well as foraminal stenosis.  Plaintiff also has tenderness in the

plantar aspects of both feet since at least September 2002 which has been attributed to plantar

fascitis.  (Tr. 14.)

Plaintiff was treated by several doctors for his neck and back pain.  Plaintiff saw Dr. Patrick Roth on September 12, 2000, complaining of intermittent back pain, and Dr. Roth believed the pain was discogenic. (Tr. 127-28.)  On January 22, 2002, Plaintiff saw Dr. Stephan Koleff for complaints of lower extremity and back pain. (Tr. 143.) Dr. Koleff's findings were essentially normal.  Dr. Koleff noted no significant changes in the lumbrosacral spine since February 19, 2001, normal alignment in the lumbrosacral spine, no evidence of loss of cerebral body height or significant spondylolisthesis, degenerative discs in L4-5 and L5-S1, normal intervertebral disc spaces, and that the central canal and neural foramina demonstrate normal contour. (*Id.*) On February 4, 2002, Dr. Daniel S.J. Choy performed laser disc decompression to the L4-5 and L5-S1 discs, and Plaintiff was able to walk out of the procedure room after the surgery. (Tr. 149.)  Dr. Choy saw Plaintiff on September 17, 2002 and noted that he was recovering well from the procedure. (Tr. 137.)

On July 22, 2002, neurologist Dr. Gerald J. Smallberg observed Plaintiff was "healthy-appearing male complaining of pain." (Tr. 91.)  Dr. Smallberg noted that there were no signs of nerve root traction, the sensory and cerebellar testing appeared normal, mental status was normal, the testing of the cranial nerve was "unremarkable," Plaintiff's straight-leg raising was limited by hamstring tightness, motor examination showed normal bulk, tone and power, and reflexes were positive and symmetrical. (*Id.*) When Plaintiff saw Dr. Smallberg again on March 11, 2003, Dr. Smallberg again noted that Plaintiff was "a healthy-appearing male complaining of pain" and noted similar findings from the July 22, 2002 visit. (Tr. 93-94.)  Dr. Smallberg mentioned that the medications that Plaintiff was taking (Neurontin, Trileptal, Synthroid, and Protonix) provided him some relief for his back pain. (*Id.*)

2

Plaintiff again visited Dr. Roth on August 1, 2002, complaining of back pain and brought an MRI scan of his lumbar spine with him. (Tr. 98, repeated at 125.)  Dr. Roth found a herniation at L4-5 with nerve compression on this scan and recommended a microdiscectomy. (*Id.*)  Dr. Roth and Dr. Dante Implicito performed miscrodiscectomy on September 12, 2002 without any complications. (Tr. 107.)  Plaintiff was discharged the same day and reported that his pain was slightly better. (Tr. 102.)

Plaintiff reported to Dr. Choy on September 17, 2002 that he had been without back pain since the September 12th surgery from Drs. Roth and Implicito. (Tr. 137.)  When Plaintiff visited Dr. Roth for a post-surgery follow-up on September 25, 2002, however, Plaintiff reported that he was unsure if there had been any improvement in his back pain since the surgery.(Tr. 123.)  As per the recommendation of Dr. Roth, Plaintiff saw Dr. Steven E. Laskin, a neurologist, on September 27, 2002. (Tr. 111-12.)  Here, Plaintiff unequivocally stated that there were no improvements since his recent surgery, contradicting his statements made to Drs. Choy and Roth just days before. (*Id.*)  Dr. Laskin found that Plaintiff was "a normal appearing male" and found that he did not have lumbar tenderness or spasm, straight-leg raising was negative, lumbar mobility was normal, there was no atrophy in the legs, gait was normal, Romberg's sign was absent, sensory testing was normal, rapid alternating movements were symmetric, and the electoromyography was normal. (Tr. 112.)  Dr. Laskin stated that plaintiff's "clinical posture" was consistent with lumbar radiculitis and he recommended conservative treatment and a prescription of Neurontin. (*Id.*)  Dr. Laskin stated that he was returning Plaintiff to the care of Dr. Roth, but would be happy to see Plaintiff again if necessary.  (*Id.*)   In a letter dated July 20, 2004, Dr. Laskin stated that he had treated Plaintiff from September 2002 to date, and Plaintiff

3

had been unable to work during this period. (Tr. 414.)

Dr. Roth again saw Plaintiff on November 26, 2002, and Plaintiff complained of continued neck pain. (Tr. 119.)  Dr. Roth noted that therapy had been beneficial for Plaintiff's lower back, and Plaintiff was currently being treated for the cervical spine. (*Id.*)  In a note signed December 3, 2002, Dr. Roth said, "I will give him disability for now as I do not understand what is causing his pain,"and said that Plaintiff could not work because of this pain. (Tr. 119-20.)  Plaintiff saw Dr. Roth again on January 13, 2003 and reported that he was in less pain on the medication Neurotonin. (Tr. 118.)  Dr. Roth reviewed a new MRI of Plaintiff's cervical spine which did not show any pathology that could account for Plaintiff's symptoms. (*Id.*)

Dr. Elliot Kaplan, a state agency physician, reviewed the evidence of the record and compiled a physical residual functional capacity assessment on April 17, 2003. (Tr. 161-68.)  Dr. Kaplan found that Plaintiff could lift ten pounds, stand and/or walk two hours in an eight hour work day, sit for about six hours in an eight hour work day, and push or pull without limitation. (Tr. 162.)  Dr. Kaplan stated that his findings were not different than the findings of Plaintiff's treating physicians on file. (Tr. 167.)

In a hearing in front of Administrative Law Judge Gerald J. Ryan on March 15, 2004, Plaintiff testified that he was not using any devices to help his mobility. (Tr. 331.)  Plaintiff also admitted that he could drive to pick up his children from school, could drive to the store, and could drive to doctor appointments and court hearings.  (Tr. 327.)  He also indicated the he was able to take care of his own personal needs, such as bathing and cleansing himself. (*Id.*)  Plaintiff explained that he was taking Neurontin, Elavil, Lorazepam, Oraphen, Sythroid and other medications for his pain, and these medications relieved his pain "tremendously." (Tr. 325, 332.)

Plaintiff stated that these medications made him cold to the point of falling asleep, yet medical source records contained no indication of these complaints. (Tr. 326, 353.)  Plaintiff also acknowledged to Judge Ryan that he could pick up a pen from the table despite alleged limited use of his arms or hands. (Tr. 330.)  Plaintiff returned to work full-time in his one-man vehicle towing business on February 25, 2005, which involves work at a medium to heavy exertional level. (Tr. 350.)  Plaintiff seeks a closed period of disability, for July 15, 2002 to February 25, 2005.

## II.   __Procedural History.__

Plaintiff first filed an application for disability benefits under Social Security Benefits on February 25, 2003. (Tr. 42-44.)  The application was denied.  Plaintiff made a request for reconsideration, but the reconsideration was also denied. (Tr. 30-33.)  Plaintiff had a hearing before the Honorable Gerald Ryan, an Administrative Law Judge ("ALJ"), on March 15, 2004, and the ALJ denied the claim on May 12, 2004. (Tr.10-22.)  The Appeals Council affirmed the ALJ's decision.  Plaintiff filed the case in the U.S. District Court for the District of New Jersey. The Honorable Faith S. Hochberg remanded the case for further review in accordance with the requirements of the Third Circuit's holding in *Sykes v. Apfel*, 288 F. 3d 259 (3d Cir. 2000).[1]  (Tr.

---

[1] *Sykes* explained, "The regulation provides that, where an individual has an impairment or a combination of impairments resulting in both exertional and nonexertional limitations, if a finding of disability is not possible based on exertional limitations alone, the grids 'provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.'" 228 F.3d at 269 (*quoting* 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2)(1999)).  A limitation is exertional if it affects the ability to meet various strength demands in terms of sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. § 404.1569a(b).  A limitation is nonexertional if it affects the claimant's ability to meet job demands other than those related to strength, such as difficulty functioning because one is nervous, anxious or depressed; difficulty maintaining attention or concentrating; difficulty understanding/ remembering instructions; and difficulty hearing or seeing.  *Id.* § 404.1569a(c).  *Sykes* also allows the Commissioner to provide notice to the claimant that the Commissioner is taking administrative notice that a claimant's nonexertional limitations do not significantly erode the occupational base, as long as the claimant is given the opportunity to respond before the Commissioner can deny the claim. 288 F.3d at 259.

359-60.)  Administrative Law Judge Irving Fliegler held a hearing on June 29, 2006, and

Plaintiff's attorney, Karl L. Kazmierczak, appeared on behalf of Plaintiff. (Tr. 416- 22.)  The ALJ

subsequently gave an Unfavorable Decision for Plaintiff on August 25, 2006.[2] (Tr. 346-58.)  The

Appeals Council affirmed the ALJ's decision, and Plaintiff commenced this action. (Tr. 340.)

## III.    Standard of Review for Disability Benefits.

This Court reviews the determination of the Commissioner to assess whether there is

substantial evidence supporting the decision.  42 U.S.C. § 405(g); *Consol. Edison Co. of New*

*York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211,1213 (3d Cir.

1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence

as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.

1999) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If there is substantial evidence

supporting the Commissioner's finding, this Court must uphold the decision even if this Court

might have reasonably made a different finding based on the record.  *See Simmonds v. Hecker*,

807 F.2d 54, 58 (3d Cir. 1986).

## IV.    Standard for Finding of Disability.

An individual may be entitled to Social Security Benefits upon a finding of disability by

---

[2] Judge Fliegler complied with the requirements of the District Court's remand. In April of 2006, the ALJ scheduled a consultative exam for Plaintiff at the government's expense; however, Plaintiff had returned to work as of February 25, 2005 and therefore requested a closed period of disability from July 15, 2002 to February 25, 2005. (Tr. 373-75.)  Because he had returned to work and the exam would be taking place outside of the closed period, Plaintiff requested that the examination be canceled, which the ALJ allowed. (Tr. 374-76.)  On June 29, 2006, Plaintiff's attorney, Karl L. Kazmierczak, appeared on behalf of Plaintiff in a hearing held by Judge Fliegler. (Tr. 416-22.)  Plaintiff's attorney was unable to answer many questions on behalf of Plaintiff, but Mr. Kazmierczak did note that Plaintiff had returned to his towing business which required medium to heavy work. (*Id.*)  Judge Fliegler, in a detailed opinion, held that there was a lack of support in the record for Plaintiff's subjective description of pain compared to the objective, medical evidence provided by various physicians.  (Tr. 349-58.)  Judge Fliegler also held that Plaintiff's exertional and nonexertional limitations did not prevent Plaintiff from performing sedentary work during the closed period. (*Id.*) For these reasons, the ALJ satisfied the instructions of the remand and performed an analysis consistent with the Third Circuit's holding in *Sykes*.

demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D). An individual will be found disabled only if the impairment is so severe that he is not only unable to do his previous work, but cannot, considering his "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity. The Commissioner first considers whether the individual is presently engaged in substantial gainful activity. If so, the individual will be found not disabled without consideration of her medical condition. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

Step Two: Severe Impairment. If the individual is not engaged in substantial gainful activity, Plaintiff must then demonstrate that she suffers from a severe impairment or combination of impairments that significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

Step Three: Listed Impairment. If Plaintiff demonstrates a severe impairment, the

7

Commissioner will then determine whether the impairment meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the individual has such an impairment, the Commissioner will find the individual disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

Step Four: Residual Functional Capacity.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite her impairment, the individual has the residual functional capacity ("RFC") to perform her past relevant work.  If she does have the RFC to perform past work, the individual will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).  RFC is defined as the most the individual can still do despite her limitations.  20 C.F.R. § 416.945(a)(1).

Step Five: Other Work.  Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's RFC, age, education, and past work experience to determine if she is able to make an adjustment to other work.  If she cannot do so, the individual will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), (g); 416.920(4)(a)(v), (g).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion through the first four steps.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform work available in the national economy.  *Id.*  If there is a finding of disabled or not disabled at any step of the sequential analysis, the Commissioner will not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

**V.**  <u>**Analysis.**</u>

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity

during the relevant period, July 15, 2002 through February 23, 2005. (Tr. 351.)  At Step Two, the

ALJ determined that Plaintiff had severe orthopedic-neurological impairments under the terms of

the regulations. (*Id.*)  At Step Three, the ALJ found that Plaintiff's musculoskeletal impairments

did not meet the criteria of the Listings. (*Id.*)  At Step Four, the ALJ determined that Plaintiff's

inability to engage in prolonged walking, standing and heavy lifting during the closed period

prevented him from returning to his past relevant work. (Tr. 356.) The ALJ then proceeded to

Step Five and determined that Medical-Vocational Rule 201.21 set forth at 20 C.F.R. Part 404,

Appendix 2, directed a finding that Plaintiff was not disabled based on all of the evidence in the

record, which showed that Plaintiff has the residual functional capacity to perform all of the

demands of the full range of sedentary work but was unable to return to his past relevant work as

a tow truck driver and mechanic. (Tr.355-58.)

Plaintiff alleges that (1) the ALJ's conclusion that Plaintiff was limited to a full range of

sedentary work based on Medical Vocational Rule 201.21 and was not disabled at any time

during the closed period is not supported by substantial evidence; and (2) the ALJ committed

reversible error by failing to re-contact Plaintiff's treating physicians.

**A.**  <u>**ALJ's finding of non-disability.**</u>

Plaintiff alleges that the ALJ's conclusion that Plaintiff could perform a full range of

sedentary work was not supported by substantial evidence.  In particular, Plaintiff argues that the

regulations provide that generally greater weight is accorded to the opinions of examining

sources than the opinion of non-examining sources.  Plaintiff points to the opinions of two

treating doctors, Dr. Roth and Dr. Laskin, who stated the claimant was not able to work.  (*Id.*)

The ALJ declined to give the opinions of Dr. Roth and Dr. Laskin controlling weight.  As the ALJ correctly noted, medical source opinions on issues reserved for the Commissioner, such as the ultimate opinion that an individual is disabled, are not given any special weight because the final responsibility for determining these issues is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e).  Therefore, Dr. Roth's statement that "I will give him disability for now as I do not understand what is causing his pain" and Dr. Laskin's statement that Plaintiff had been unable to work because of the pain (Tr. 119, 414.) constitute opinions on issues reserved to the Commissioner, and while the ALJ considered them he did not err in deciding how much weight to accord to these opinions.

The regulations provide that a treating source's opinion on the nature and severity of the impairment is afforded controlling weight when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.R.F. § 404.1527(d)(2).  When an examining source's opinion is not given controlling weight, several factors are applied in determining the degree of weight given to the opinion. *Id.*  These factors include the length of the treatment and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the Commissioner's attention by the claimant. *Id.* The opinions of treating physicians do not necessary control when there is conflicting evidence on the record. *Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991).  *See also Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).

Here, the ALJ held that neither Dr. Roth's nor Dr. Laskin's opinions are supported by

their own findings and are contradicted by substantial evidence on the record.  Rather, they

restate Plaintiff's complaints of pain. (Tr. 355.)  According to the regulations, a claimant's

description of his or her impairment are not enough to establish an impairment; "anatomical,

physiological or psychological abnormalities which can be shown through the use of medically

acceptable laboratory diagnostic techniques" are required. 20 C.F.R. § 404.1528.  The ALJ found

that Plaintiff's complaints regarding the degree of his pain and extent of his limitations were not

supported by objective findings or by what could be reasonably be expected as a result of his

abnormalities.  (Tr. 352.)

    The ALJ determined that Dr. Roth's statement that he would "give him disability for

now" (Tr. 355, 118, 119) was explained by Dr. Roth's statements that he did not understand what

caused Plaintiff's pain in both November 2002 and January 2003.  (Tr. 118-119.)  Dr. Roth also

noted that a recent MRI of Plaintiff's cervical spine did not show any pathology which would

explain Plaintiff's symptoms and further stated that neurology and rheumatology work-ups were

negative. (*Id.*)  Dr. Roth noted that physical therapy had helped Plaintiff's muscle spasm and had

been somewhat beneficial for his lower back and stated Plaintiff's pain had improved with an

increased dosage of Neurotonin. (*Id.*)  Therefore, Dr. Roth's statements that he would "give him

disability" were determined by the ALJ not to be based on objective, medical evidence and

inconsistent with the majority of the record evidence.  Thus, based on this analysis, the ALJ

determined the weight given to these portions of the doctors' opinions, as the ALJ applied 20

C.F.R. § 404.1527(d)(2).  Therefore, Plaintiff's contention that the ALJ failed to consider these

factors required by the regulations is not supported by the record of the ALJ's deliberative

processes.

Dr. Laskin's comment on July 20, 2004 that Plaintiff was unable to work was not accompanied by objective information and was not supported by his laboratory findings from September 27, 2002. (Tr. 355, 111-12.)  Dr. Laskin's examination of Plaintiff in September of 2002 found that Plaintiff had no lumbar tenderness or spasm, straight-leg raising was negative, lumbar mobility was normal in all planes, Plaintiff's legs revealed no atrophy, gait was normal, sensory was normal, muscle testing showed no weakness, deep tendon reflexes were equal, and an EMG study was normal. (Tr. 111-112.)  As the ALJ correctly noted, Dr. Laskin's note in July 2004 stating that Plaintiff was unable to work is not supported by any medical findings and was inconsistent with his September 2002 examination as well as with the majority of the evidence on the record. (Tr. 414.)

In both July 2002 and March 2003, Dr. Smallberg observed the Plaintiff was a "healthy-appearing male" after a relatively normal examination. (Tr. 91, 93.)  Dr. Smallberg was an examining source whose opinion was consistent with the rest of the evidence on the record, leading the ALJ to the conclusion that Plaintiff was not disabled.

Dr. Kaplan, a state agency medical consultant who reviewed the record, completed a physical residual functional capacity assessment and found that Plaintiff could lift ten pounds, stand and/or walk at least two hours per day, sit six hours per day, and push and/or pull without limitation. (Tr. 162.)  This opinion is also consistent with the evidence on the record.  State medical agency consultants are qualified doctors who are experts in evaluating medical evidence in disability claims under the Act, and these opinions are among the type of evidence in the record that the ALJ properly considered. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

Plaintiff contends that it is well established that the opinion of a doctor who has not

personally examined the patient must be given less weight than if the doctor had treated the

patient, relying on *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986). *Brewster* is clearly

distinguishable from the present circumstances because in that case, the only evidence that the

claimant could walk normally was based on the conclusions of a doctor who did not examine the

claimant. 786 F.2d at 585. Here, Dr. Roth's and Dr. Laskin's statements that Plaintiff was

disabled and could not work contradicted not only their own medical findings, but also the

findings of other physicians, some of whom had examined Plaintiff (Dr. Smallberg and Dr.

Implicito) and others of whom had not (Dr. Kaplan). As stated above, the weight given to

examining sources depends on the supportability and consistency of the these opinions with the

rest of the record of their examinations and other evidence. 20 C.F.R. §§ 1527(d)(2),

416.927(d)(2). "[T]he opinions of non-examining physicians may override a treating source's

opinions provided the former are supported by evidence on the record." *Alexander v. Shalala*,

927 F. Supp. 785, 795 (D.N.J. 1995), *aff'd* 85 F.3d 611 (3d Cir. 1996). The ALJ considered all

of the doctors opinions and found that Dr. Kaplan's conclusions were consistent with the entirety

of the record; the ALJ was thus permitted to give this opinion more weight than the opinions of

Drs. Roth and Laskin particularly in light of the other findings in those doctors' respective

examination reports. The ALJ did not abuse his discretion in the manner in which he weighed

the various sources of medical evidence, and his finding of no disability is supported by

substantial evidence in the record.

    **B.**    <u>**The ALJ was not required to recontact Plaintiff's examining physicians.**</u>

    Plaintiff alleges that the ALJ erred by failing to recontact Dr. Roth and Dr. Laskin as

pursuant to 20 C.F.R. § 404.1512(e). Plaintiff bases this argument on the fact that the ALJ found

that the opinions of these doctors addressed the legal question reserved for the ALJ.  Plaintiff

contends that the ALJ should have recontacted Dr. Roth to determine what definition of disability

he used because Dr. Roth did not indicate this in his opinion.  Plaintiff further claims that

because the ALJ rejected Dr. Laskin's opinion on the ground that his report contained no

objective information, the ALJ should have recontacted Dr. Laskin to obtain whatever

information was necessary.

Under 20 C.F.R. § 404.1512(e), the Commissioner will recontact treating physicians

when the evidence received from this source is inadequate to reach a determination.  The ALJ did

not find that the reports of Dr. Laskin and Dr. Roth were inadequate to make a determination

regarding Plaintiff's alleged disability.  Rather, the ALJ determined that the reports of Dr. Roth

and Dr. Laskin contained opinions on issues reserved for the ALJ under 20 C.F.R. §§ 1527(e)

and 419.927(e), that were not supported by "medically acceptable clinical and laboratory

diagnostic techniques" or their own objective findings under 20 C.F.R. § 1527(d); and because

the ALJ did not find the reports of Drs. Roth and Laskin to be inadequate to make a

determination,[3] the ALJ was not required to recontact these physicians under 20 C.F.R. §§

---

[3] The ALJ found that Dr. Roth's opinion on Plaintiff's condition was inconsistent with substantial other evidence on the record as well as his own findings. Therefore, the ALJ did not need clarification from Dr. Roth because his objective evidence was not ambiguous, and there was enough reliable evidence upon which to make a determination. (Tr. 118-26, 355.)  Similarly, the ALJ did not need to request additional evidence from Dr. Laskin because there was substantial evidence on the record, including a report from Dr. Laskin, that enabled the ALJ to make his determination.  The ALJ already had the September 2002 report from Dr. Laskin in the record and considered this report, even though that Plaintiff did not list Dr. Laskin as a treating physician in 2003.  In June 2003 the ALJ did request evidence from Dr. Laskin even though Plaintiff did not list Dr. Laskin as a treating physician on the Social Security forms.  In response, Dr. Laskin submitted a report of his neurological consultation of Plaintiff from September 2002, and the ALJ considered the objective findings of the September 2002 report. (Tr. 87, 111-12.) Additionally, Dr. Laskin had concluded his September 2002 report by noting that Plaintiff would return to Dr. Roth's care, but he was willing to see Plaintiff again as needed. (Tr. 112.)  Thus, the ALJ could reasonably conclude that since the September 2002 report from Dr. Laskin was on the record and Dr. Laskin stated he would return Plaintiff to the care of another doctor, Plaintiff would let the ALJ know if further information from Dr. Laskin was helpful to his case.

404.1512(e). *See Thomas v. Barnhart*, 278 F.3d 947, 958 (3d Cir. 2002).

The record supports the ALJ's determination that he had adequate information on the record to make a determination about Plaintiff's disability claim. The ALJ did not find the reports of Dr. Laskin or Dr. Roth to be ambiguous, and the ALJ was satisfied that he had sufficient other evidence in the record to meet the obligation of 20 C.F.R. § 404.1512(e).

**VI.**     **Conclusion.**

For the aforementioned reasons, this Court affirms the ALJ's finding that Plaintiff was "not disabled" from July 15, 2002 to February 25, 2005.  The ALJ's finding that Plaintiff was limited to a full range of sedentary work is supported by substantial evidence; the ALJ accorded the opinions of the treating physicians with proper weight; and the ALJ was not required to recontact Plaintiff's examining physicians.  The Commissioner's denial of Social Security Disability Benefits to Plaintiff is **AFFIRMED.**

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.
